# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ELIAS ATAMIAN, | ) | Chapter 13 |
| DEBTOR. | ) | Case No. 04-46088-JBR |
| | ) | |

**MEMORANDUM ON DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 362(h) FOR SANCTIONS, DAMAGES, AND PUNITIVE DAMAGES AS AGAINST D.J. QUIRK, INC. AND UNIVERSAL UNDERWRITERS GROUP [# 105] AND CREDITOR D.J. QUIRK, INC. AND UNIVERSAL UNDERWRITERS GROUP'S OPPOSITION TO DEBTOR'S MOTION [# 109]**

This matter came before the Court for hearing on Debtor's Motion Pursuant to 11 U.S.C. § 362(h) for Sanctions, Damages, and Punitive Damages as Against D.J. Quirk, Inc. and Universal Underwriters Group [# 105] and Creditor D.J. Quirk, Inc. And Universal Underwriters Group's Opposition to Debtor's Motion [# 109], which opposition includes a request for clarification of this Court's previous order granting D.J. Quirk, Inc. ("Quirk") limited relief from the automatic stay. For the reasons set forth herein, sanctions will be imposed on Quirk. Sanctions will not be imposed upon Universal Underwriters Group ("Universal").

FACTS

The parties agree that an evidentiary hearing is not necessary in this case. The relevant facts are not in dispute and are drawn from the various pleadings and attachments thereto submitted by the parties. One of the submissions is a tape of a supplementary process proceeding in the Worcester District Court (the "Supplementary Process Proceeding"). The tape is unintelligible but a transcript of that proceeding is not necessary to this Court's findings, especially given that the relevant pleading filed by Quirk in that matter is not in dispute.

In September 1999 Quirk filed suit in the Norfolk Superior Court (the "Norfolk Action")

against the Debtor, who had been the treasurer and part owner of Superior Isuzu, Inc.

("Superior"),[1] and others.  Quirk alleged that all of the defendants participated in a scheme to

defraud Quirk by taking certain vehicles without paying for them.  The case was resolved as to

all the defendants except the Debtor and Superior.  Trial was to commence on November 1,

2004.  On October 29, 2004 (the "Petition Date") the Debtor filed his Chapter 13 bankruptcy and

the state court stayed the trial as to both the Debtor and Superior.  In December 2004 Quirk

moved for relief from the automatic stay as against the non-debtor Superior so that trial could

proceed as to Superior only.  The motion was granted[2] and a default judgment ultimately entered

against Superior for failure to appear at a litigation control conference.  Subsequently the state

court assessed damages against Superior following a hearing which Superior did not attend.

Based upon the submissions, the state court judge made the following findings:

> Quirk operated an automobile auction in Quincy.  Superior
> submitted an application to Quirk seeking authorization to
> participate in the auction through its agents, Chuck Atamian and
> Kevin Melkonian.  Between October 28, 1996 and March 3, 1997
> co-defendant, Kevin Melkonian, as agent for and on behalf of
> Superior obtained nine automobiles, being offered for sale at the
> auction, without paying Quirk for the vehicles.  The total cost to
> Quirk was $101,410.00.  Kevin Melkonian as agent for Superior
> committed and [sic] unfair and deceptive act or practice.  Superior
> knew it did not pay for the vehicles.
>
> The docket entries are indicative of the fact that Superior used the
> motion practice to delay a resolution of this matter.  As a result,
> Quirk incurred attorney's fees in prosecuting this case in the
> amount of $58,429.50 and costs of $8,745.05.  In light of the
> defendant's conduct the award shall be trebled under G.L. c. 93A.

---

[1]In February 2004 Superior's assets, with certain exclusions, were sold to an entity which
does not appear to have any relationship to Superior.

[2]Nothing in the Bankruptcy Code stayed the Norfolk Action as to the non-debtor,
Superior nor required Superior to seek this relief.  It did so apparently because of the reluctance
of the state court to proceed with the Norfolk Action against Superior in light of the Debtor's
bankruptcy.  The Debtor did not object to the relief.

Shortly after the Petition Date Quirk filed a proof of claim indicating that it was owed

$101,410 based on the causes of action asserted against the Debtor in the Norfolk Action.  The

proof of claim also indicates that the debt was incurred between October 28, 1996 and June 23,

1997.  The attachment to the proof of claim briefly sets forth the relationship between Quirk and

the Norfolk Action defendants and contains the following statements:

> In or about September 1999, Quirk brought suit against Atamian,
> Superior, and others to recover the agreed upon purchase price of
> the vehicles described above.  Quirk also sought to recover
> attorney's fees and costs incurred in connection with the
> Defendants', including Atamian's, fraudulent conduct.  It sought
> recovery from the Defendants, including Atamian, under theories
> of deceit, conspiracy, breach of contract, and violation of M.G.L. c.
> 93A, § 2 and § 11.

The Debtor objected to Quirk's proof of claim and at the hearing on the objection, the

parties agreed that either the state court action would be removed to this Court or one of the

parties would seek relief from the stay.  Consequently Quirk filed its motion for relief in which

it requested relief to pursue its claims in the Norfolk Action against the Debtor.  Alternatively it

requested that the case be dismissed asserting that "the noncontingent, liquidated, unsecured debt

owed by Atamian to Quirk is greater than the jurisdictional threshold of $307,675...."[3]  The

Debtor objected, in part because Quirk's proof of claim alleges a debt of only $101,410.  After a

hearing the Court entered the following order:

> RELIEF FROM STAY GRANTED ONLY TO LIQUIDATE THE
> CLAIM AGAINST DEBTOR, NOT TO ENFORCE THE SAME.
> WHETHER CLAIMANT IS LIMITED OR CAPPED AT
> AMOUNT OF FILED PROOF OF CLAIM NOT DETERMINED
> BY THIS ORDER.

---

[3]Quirk based its calculation of damages on the June 2000 judgment in the amount of
$304,230 plus interest, costs, and attorney's fees, entered against one of the co-defendants, Kevin
Melkonian.

In October 2005, well after the bar date for filing claims, Quirk filed a motion to amend its proof of claim seeking to raise the amount of the claim to $446,414.05, the amount of the judgment entered against Superior in the Norfolk Action, on the basis that the Debtor, as an officer of Superior, might be liable for the judgment. Quirk again sought to have the case dismissed based on an argument that the claim thus exceeded the threshold amount for a Chapter 13. On November 29, 2005 the motion was denied because, among other things, the Norfolk Action was to be tried against the Debtor approximately a week later.[4] Indeed, the trial went forward and in December 2005 the state court jury returned a verdict in the Debtor's favor on all counts.

Undaunted by the jury verdict in favor of the Debtor, Quirk brought the Supplementary Process Proceeding ostensibly against Superior and summoned the Debtor in his capacity as an officer of Superior to testify at a hearing. Upon commencement of the hearing, however, Quirk presented a pleading entitled "Creditor D.J. Quirk's Memorandum of Law in Support of Elias A. Atamian's Personal Liability for Judgment Entered Against Debtor, Superior Isuzu, Inc." Conspicuously absent from the Memorandum is the fact that a jury had returned a verdict in Atamian's favor. Quirk's Memorandum ends its recitation of the procedural history of the Norfolk Action with the September 2005 issuance of an execution on the default judgment obtained against Superior. Quirk then makes the unfounded conclusion, as it has on numerous occasions before this Court, that Superior's failure to appear and to dispute the allegations against it makes those allegation true and thus raises a question of Atamian's liability for

---

[4]The Court was also mindful of other positions taken by Quirk in this case. In December 2004 Quirk objected to the Debtor's Chapter 13 plan on bad faith grounds based solely on the fact that the Debtor filed bankruptcy to prevent the state court trial from going forward. The Court overruled this objection.

Superior's conduct.  Moreover in the same Memorandum Quirk argued that

> In the Norfolk action, no evidence was presented that anyone other
> than Superior's corporate officers were involved in the alleged
> conspiracy or could be liable for Quirk's damages.  Notably, the
> issue of Atamian's personal liability as a corporate officer of
> Superior has never been litigated.  At the trial in the Norfolk
> action, the Court sustained the objection of Atamian's counsel
> when Quirk sought to send to the jury the question of whether
> Atamian could be personally liable for the conduct of Superior.
> Accordingly, the issue of Atamian's personal liability is the proper
> subject of inquiry in the present supplementary process action.

The Worcester District Court found that Quirk could not pursue Atamian individually.

POSITION OF THE PARTIES

The Debtor now seeks sanctions against Quirk and Universal for violations of 11. U.S.C.

§ 362(a).  He asks for his attorney's fees plus punitive damages.

Quirk and Universal respond that they did not violate the automatic stay for two reasons.

First they allege that the claim against the Debtor based on his liability as a corporate officer of

Superior is a post-petition claim.  Alternatively they assert they did not attempt to collect a debt

against the Debtor in the Supplementary Process Proceeding; in their view the Supplementary

Process Proceeding Memorandum was merely an attempt to inquire as to the current status of

Superior's assets.  Both position are absurd at best.

Finally, they ask the Court to clarify its order granting Quirk relief from the stay to

pursue the Norfolk Action against the Debtor to "clarify Quirk's right to commence and/or

continue judicial proceedings against Atamian with regard to post-petition claims and debts,

including Quirk's equitable claim against Atamian for his breach of fiduciary duties as Treasurer

of Superior, thus rendering Superior insolvent and unable to satisfy its debt to Quirk."  With the

exception of raising additional new potential causes of action against the Debtor, this last request

is another attempt to convince the Court that actions that happened *before* the Debtor's

5

bankruptcy are transformed into *post-petition* claims.

DISCUSSION

Section 362(a), which provides the automatic stay,[5] is acknowledged to be "one of the fundamental debtor protections provided by the bankruptcy laws." S.Rep. No. 95-989, p. 54 (1978); H.R.Rep. No. 95-595, p. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840, 5963, 6296. It gives debtors "breathing room by 'stop[ping] all collection efforts, all harassment, and all foreclosure actions.'" *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir.1997) (quoting H.R.Rep. No. 95-595 at 340 [1977], reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97). It permits an orderly administration of the estate thus safeguarding the rights of all creditors. *Id.* Consequently courts "must display a certain rigor in reacting to violations of the automatic stay." *Id.* at 975-76.

The version of § 362(h) of the Bankruptcy Code, which is applicable to this case,[6] provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover

---

[5]The automatic stay provision of the Bankruptcy Code provides in relevant part:
(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of:
(1) the commencement or continuation, including the issuance of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ....

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....11 U.S.C. § 362(a).

[6]Changes to a debtor's right to damages for violations of the automatic stay, now codified at § 362(k), became effective on October 17, 2006 and, despite Quirk and Universal's assertions to the contrary, § 362(k) does not apply to this case. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 § 1501, Pub.L. No. 109-8, 119 Stat. 23 (2005).

punitive damages.

"A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). If a violation has occurred, then the Court is compelled, as evidenced by the use of the word "shall," to award actual damages.

In the instant case there is no question that Quirk knew of the Debtor's bankruptcy and the automatic stay. Indeed it sought relief from the stay on two occasions and the relief it requested with respect to the Debtor was quite specific. The motion for relief sought permission "to permit Quirk to pursue claims against Elias A. Atamian in Norfolk County Superior Court Civil Action Number 99-1564, D.J. Quirk, Inc. V. Elias A. Atamian, et al." The order entered by the Court was equally specific: Quirk could liquidate its claims only. Moreover Quirk also intended the action it took that violated the automatic stay. It filed the Supplementary Process Proceeding; it sought to pursue the Debtor in an action for which relief had not been granted. Its attempt to recharacterize the Supplementary Process Proceeding Memorandum as an "inartfully worded" attempt "to provide the District Court with a feel for the procedural complexity of this matter, as well as a flavor for the rather blurred line between Superior's corporate well-being and that of its Treasurer, Atamian" is disingenuous and irrelevant.[7] The Supplementary Process Proceeding Memorandum speaks clearly to the fact Quirk was acting well beyond the scope of

---

[7]If the debtor had requested an award of damages against Quirk's counsel, the Court would have been inclined to grant the same. The request was not made and the Court, having had to devote significant resources dealing with Quirk's arguments, leaves Quirk and its counsel to determine how to apportion the award.

7

the relief it sought and obtained in this Court.[8]

Quirk's argument that the Supplementary Process Proceeding is not covered by the automatic stay because it is a postpetition action represents a very fundamental misunderstanding of bankruptcy law, a dishonest attempt to shield itself from liability, or both. The underlying actions about which Quirk complains arose prepetition; Quirk's proof of claim is evidence of the dates as is the complaint in the Norfolk Action. All the judgment against Superior did was liquidate the amount of the *contingent* and *disputed* claim Quirk had against *Superior*. Prior to the Petition Date Quirk had, but did not assert in its proof of claim or anything attached to its proof of claim, a claim[9] that the Debtor might be liable for any judgment entered against Superior under a corporate veil-piercing theory. It is too late to assert that claim now.[10]

Because the award of actual damages, which includes costs and attorney's fees, is

---

[8]The Court is disturbed by counsel's glaring omission in the Supplementary Process Proceeding Memorandum's of the jury verdict returned in the Debtor's favor. That practice occurred in the Supplementary Process Proceeding and thus is left to the Worcester District Court to address if it is so inclined.

[9]Under the Bankruptcy Code a "claim" includes the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5).

[10]In determining whether to permit an amendment to a proof of claim after the bar date, the Court undertakes a three-part examination as instructed by the Court of Appeals.

> First, the proposed amendment must not be a veiled attempt to
> assert a distinctly new right to payment as to which the debtor
> estate was not fairly alerted by the original proof of claim. Second,
> the amendment must not result in unfair prejudice to other holders
> of unsecured claims against the estate. Third, the need to amend
> must not be the product of bad faith or dilatory tactics on the part
> of the claimant. *Juniper Dev. Group v. Kahn (In re Hemingway
> Transp., Inc.)*, 954 F.2d 1, 10 (1st Cir.1992).

*Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997).

mandatory, the Court awards the Debtor $5,584.48 in actual damages against Quirk.

Section 362(h) also permits an award of punitive damages "in appropriate circumstances." Although the Bankruptcy Code is silent as to what those circumstances might be, relevant factors include (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. *In re Heghmann*, 316 B.R. 395, 405 (1st Cir. B.A.P. 2004).

In this case Quirk does not even allege any provocation by the Debtor. In fact it appears that Quirk surprised the Debtor and his counsel at the Supplementary Process Proceeding by proffering the Memorandum. Instead Quirk's actions as a whole in this case lead to the conclusion it has attempted to undermine the Debtor's right to be in bankruptcy. Quirk and its counsel show an overwhelming lack of respect for the bankruptcy laws and the integrity of the bankruptcy process. Quirk falls into the category of one who refuses to take "no" as an answer. It lost in the Norfolk Action as to the Debtor but it was determined to pursue him anyway. When called to account for its actions, its arguments as to why it had not violated the automatic stay were so specious as to be an insult to this Court. Thus this case presents one of those circumstances in which an award of punitive damages is appropriate. Consequently the Court awards punitive damages in the amount of $10,000 against Quirk.

The Debtor also seeks an award of damages against Universal, the subrogee. There is nothing in this record, however, to indicate that Universal was involved in any of the foregoing actions. It may be that Universal is the real party in interest but Universal's name appeared on none of the pleadings filed by Quirk until the opposition to the Motion for Sanctions, and perhaps then only because the Debtor sought to recover damages from both. Universal's name does not appear on the Supplementary Process Proceeding nor on the Supplementary Process

Proceeding Memorandum.  Consequently the Debtor has failed to prove Universal violated the

automatic stay.

Finally Quirk's opposition to the Motion for Damages contained a request for

clarification to permit Quirk to continue to pursue claims against the Debtor.  That request will

be denied lest Quirk believe it continues to have any rights to pursue the Debtor on its judgment

against Superior.

Separate orders will issue.

Dated: June 15, 2006

_Joel B. Rosenthal_
_____
Joel B. Rosenthal
United States Bankruptcy Judge

10